IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL and KELLY YURCIC, | : | |
| Plaintiffs | : | CIVIL ACTION |
| v. | : | |
| | : | |
| PURDUE PHARMA, L.P., PURDUE PHARMA, INC., PURDUE FREDERICK COMPANY, ABBOTT LABORATORIES, ABBOTT LABORATORIES, INC., MORTON RUBIN, M.D., and HOWARD R. CORBIN, M.D. | : | NO. 02-3737 |
| Defendants | : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REMAND

Defendants Purdue Pharma L.P. ("Purdue LP"), Purdue Pharma, Inc. ("Purdue Inc.") and Purdue Frederick Company ("Purdue Frederick") [hereinafter collectively referred to as "Purdue"] and Defendants Abbott Laboratories ("Abbott Lab") and Abbott Laboratories, Inc. ("Abbott Inc.") [hereinafter collectively referred to as "Abbott"] improperly removed this case from the Court of Common Pleas of Philadelphia County; therefore, Plaintiffs Michael and Kelly Yurcic, by and through their attorneys respectfully submit this Memorandum of Points and Authorities in support their Motion for Remand.

**I. PROCEDURAL HISTORY**

On or about January 4, 2002, Plaintiffs Michael and Kelly Yurcic initiated this litigation with a filing of a Writ of Summons in the Court of Common Pleas of Philadelphia County, entitled <u>Michael and Kelly Yurcic v. Purdue Pharma, L.P., Purdue Pharma, Inc., Purdue Frederick Company, Abbott Laboratories, Abbott Laboratories, Inc., Morton Rubin, M.D. and Howard R. Corbin, M.D.</u>, December Term No. 004607. (A true and correct copy of the Writ of Summons is attached hereto as Exhibit "A"). On or about January 14, 2002, Defendants Purdue and Abbott were served with a copy of the Writ of Summons and the Civil Cover Sheet.

On or about January 22, 2002, a Praecipe and Rule to File a Complaint was filed by Defendant Morton Rubin, M.D. ("Rubin"). (A true and correct copy of the docket entries in the Court of Common Pleas of Philadelphia County is attached hereto as Exhibit "D"). On or about January 23, 2002, a Praecipe and Rule to File a Complaint was filed by Defendant Howard R. Cohen, M.D. ("Cohen")(incorrectly identified as Howard R. Corbin, M.D.). (See Exhibit "D"). On or about February 8, 2002, Defendants Rubin and Cohen agreed to give plaintiffs a twenty day extension to file the Complaint. (A true and correct copy of the relevant correspondence is attached hereto as Exhibit "E").

On March 1, 2002, Plaintiffs' counsel learned that Defendant Rubin was insured by PHICO Insurance Company, which had protection from litigation as provided by Judge John W. Herron's Order dated February 6, 2002. (A true and correct copy of the unsigned Order is attached hereto as Exhibit "F"). That same day, Plaintiffs corresponded with Defendants Rubin and Cohen, stating that the insolvency of PHICO stayed the time in which to file a complaint. (A true and correct copy of the relevant correspondence is attached hereto as Exhibit "G").

Upon information and belief, on or about May 3, 2002, the PHICO Stay of Proceedings was lifted. On May 14, 2002, the docket entries in the Court of Common Pleas of Philadelphia County reflect that this case was removed from deferred status. (See, Exhibit "D"). On or about May 17, 2002, after the Stay of Proceedings was lifted, a Praecipe and Rule to File a Complaint was filed by Defendants Purdue and Abbott. (See Exhibit "D").

On or about May 31, 2002, Plaintiffs Michael and Kelly Yurcic filed a Complaint in the Court of Common Pleas of Philadelphia County. (A true and correct copy of Plaintiffs' Complaint is attached hereto as Exhibit "B"). The Complaint states a negligence claim against Defendants, Purdue and Abbott, and a medical malpractice claim against Defendants Rubin and

Cohen, both Pennsylvania residents and citizens, arising from injuries sustained by Plaintiff, Michael Yurcic, caused by his ingestion of the narcotic drug OxyContin.

On or about June 6, 2002, Defendant Cohen filed preliminary objections to Plaintiffs' Complaint based upon lack of factual specificity with regard to the medical malpractice claim. (A true and correct copy of Defendant's Preliminary Objections is attached hereto as Exhibit "H"). On or about June 12, 2002, before Plaintiff responded to Defendant Cohen's preliminary objections, Defendants Purdue and Abbott filed a Notice of Removal of the state court action to federal court based primarily upon diversity jurisdiction and secondarily upon a meritless federal question jurisdiction argument.

## II.   STATEMENT OF FACTS

This is a claim for medical malpractice and negligence liability relating to the sale and prescription of OxyContin to Plaintiff Michael Yurcic. (See Exhibit "B"). Morton Rubin, M.D., is and was a licensed and practicing physician in the Commonwealth of Pennsylvania who, at all times relevant hereto, was a doctor who was involved in the examination, testing diagnosis and treatment rendered to the Plaintiff, and through whose negligence the Plaintiff was injured, or who was responsible for and/or whose combined actions or omissions contributed to the injuries suffered by the Plaintiff. (Id. at ¶ 126-127). On or about October 1996, Plaintiff Michael Yurcic, was prescribed OxyContin by Defendant Dr. Rubin for pain management resulting from Plaintiff's injured knee. (Id. at ¶ 53). Defendant Dr. Rubin regularly and continuously prescribed OxyContin to Plaintiff from October 1996 through February 28, 1999. (Id. at ¶ 54). On or about March 1, 1999, Defendant Dr. Rubin performed a right total knee replacement on Plaintiff Michael Yurcic. (Id. at ¶ 55). Upon information and belief, Defendant Dr. Rubin, gave Plaintiff OxyContin (time-released and OxyContin IR (immediate-release) prescriptions, for pain

management, upon his release from knee surgery. (Id. at ¶ 56). On March 5, 1999, Kelly Yurcic informed Defendant Dr. Rubin that Michael was nauseated, vomiting and felt confused from taking a lot of OxyContin. (Id. at ¶ 57). On March 8, 1999, Plaintiff Michael Yurcic was admitted to Holy Spirit Hospital for the side affects of taking to much OxyContin. (Id. at ¶ 59-61). Upon admittance to Holy Spirit Hospital, Michael Yurcic was under the care of Defendant Dr. Cohen, who represented that the possessed the experience, knowledge and expertise necessary to care for and treat plaintiff's medical condition. (Id. at ¶ 62). Prior to Michael Yurcic's admittance to Holy Spirit Hospital, his last dosing of OxyContin occurred on March 5, 1999. (Id. at ¶ 63). On or about March 15, 1999, ten days subsequent to Plaintiff's last dosage of OxyContin, Defendant Dr. Cohen (incorrectly identified as Dr. Rubin in ¶ 66 of the complaint), prescribed plaintiff OxyContin 20mg one tablet every twelve hours and OxyContin IR 5mg not to exceed three times a day. (Id. at ¶ 66).

On March 17, 1999, upon Plaintiff's release from Defendant Dr. Cohen's care, upon information and belief, Dr. Cohen prescribed Michael Yurcic OxyContin and OxyContin IR. (Id. at ¶ 67-68). Defendant Dr. Rubin resumed prescribing OxyContin to Plaintiff on March 23, 1999 whereupon he doubled Plaintiff's OxyContin dosage from one 20mg tablet every twelve hours to two 20mg tablets every twelve hours. (Id. at ¶ 69-70). Defendant Dr. Rubin continued to regularly and continuously prescribe OxyContin to Plaintiff through August 1999 whereby he attempted to administer alternative narcotic pain management therapies medications through November 15, 1999. (Id. at ¶ 71-73). The alternative narcotic pain management therapies were ineffective at alleviating Plaintiff's withdrawal symptoms from OxyContin. (Id. at ¶ 74). On or about November 19, 1999, Plaintiff went to Dr. Albert Zanetti, not a party to this action, who prescribed on OxyContin 20mg tablet every twelve hours and established a six-month narcotic

withdrawal plan. (Id. at ¶ 75). On December 17, 1999, Plaintiff again saw Dr. Zanetti and informed him that he had followed the plan for the first two weeks; however, the next week he used his two week supply of OxyContin in one week and was presently suffering from withdrawals. (Id. at ¶ 76). At that time, Plaintiff agreed to enroll in an in-patient detox program, and on December 27, 1999, Plaintiff was admitted to the Caron Foundation for treatment of his addiction to OxyContin. (Id. at ¶ 76-77). Upon his admission to the Caron Foundation, Plaintiff had no true comprehension of his addiction as a disease. (Id. at ¶ 78). Upon his release on January 17, 2000, Plaintiff recognized that he was addicted to OxyContin and that henceforth he advised not take any narcotics or mood altering drugs and continue with out-patient treatment. (Id. at ¶ 80-83).

OxyContin was designed, tested, manufactured, labeled, advertised, promoted, marketed, sold and/or distributed by Purdue and/or Abbott. Both Defendants, Purdue and Abbott regularly conduct business in the City and County of Philadelphia and developed, manufactured, marketed, distributed and sold OxyContin in interstate commerce, the Commonwealth of Pennsylvania, and the City and County of Philadelphia. Id. at ¶ 3-13.

Upon information and belief, Defendants Dr. Rubin and Cohen are now, and were at the time of the commencement of the State Court Action, residents and citizens of the Commonwealth of Pennsylvania and duly licensed to practice medicine in said Commonwealth. Plaintiffs, Michael and Kelly Yurcic, are citizens of the Commonwealth of Pennsylvania, residing at 46631 Evelyn Street, Harrisburg, Pennsylvania 17111.

Complete diversity between the parties does not exist to support removal of this action to federal court in accordance with 28 U.S.C.A. § 1332. In addition, Defendants Purdue and Abbott cannot meet its burden of establishing fraudulent joinder in order to support removal of

this case to federal court. The facts are clear that a prima facie claim of medical malpractice exists against Drs. Rubin and Cohen, for prescribing the pain drug OxyContin to Plaintiff and failing evaluate, examine, monitor, treat, and attend to the Plaintiff in connection with the administration and continuing use of the addictive drug OxyContin. Plaintiffs request that this Honorable Court remand this case to state court.

### III.   LEGAL ARGUMENT

#### A.   This Claim Should Be Remanded to State Court Because Complete Diversity Does Not Exist In Accordance With 28 U.S.C.A. § 1332.

Plaintiffs respectfully request that this Honorable Court Remand this claim to state court because complete diversity does not exist in accordance with 28 U.S.C.A. § 1332. Title 28 of the United States Code Annotated § 1332 provides that "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (1) citizens of different States . . ." See 28 U.S.C.A. § 1332(a)(1). Diversity jurisdiction under 28 U.S.C.A. § 1332 requires complete diversity - **each plaintiff must be diverse from each defendant**. See Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402 (1978); Dadzie v. Leslie, 550 F.Supp 77, 770 (E.D.Pa. 1982) *emphasis added*.

A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the party in good faith, destroys complete diversity. See Rushing v. Dan River, Inc., 2000 WL 1456292 (M.D.N.C.). The burden is on the defendant, as the party removing the action to federal court, to establish jurisdiction. See Bromberg v. Metropolitan Life Ins. Co., 50 F. Supp.2d 1208 (M.D. Ala. 1999). Moreover, the United States Supreme Court has specifically stated that removal statutes must be strictly construed because of the significant federalism concerns raised by removal jurisdiction. Id. at 1211 *citing* Shamrock Oil & Gas Corp. v. Sheets,

313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). All doubts and uncertainties about federal court jurisdiction must be resolved in favor of a remand to state court. Id.

The present case should be remanded to state court because complete diversity does not exist between the parties. This case involves a claim for medical malpractice and products liability relating to the sale and prescription of OxyContin to Plaintiff Michael Yurcic. (See Exhibit "B"). Plaintiffs, Michael and Kelly Yurcic, and Defendants, Drs. Rubin and Cohen, are all citizens and residents of the Commonwealth of Pennsylvania. **This is undisputed**. Consequently, complete diversity does not exist and the case should be remanded to state court in accordance with the applicable statutory and case law.

On June 12, 2002, Defendants Purdue and Abbott improperly filed a Notice of Removal of the state action to federal court based upon diversity jurisdiction. As long as a claim exists in state court against Defendants, Drs. Rubin and Cohen, both citizens and residents of Pennsylvania, diversity is not complete and removal is improper under 28 U.S.C.A. § 1332.

  **B.** **This Claim Should Be Remanded to State Court: Defendants Purdue and Abbott Have Not Met its Burden of Establishing Fraudulent Joinder of Defendants, Drs. Rubin and Cohen, to Support Removal Under Federal Law**

In its' Notice of Removal, Defendants Purdue and Abbott contends that Drs. Rubin and Cohen were fraudulently joined as a defendant to defeat diversity jurisdiction and, therefore removal is proper. (See Exhibit "C" at ¶ 4). It is well-settled law that the removing party bears the burden of proving that the joinder of the resident defendant was fraudulent. See Bromberg, *supra*. "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Id. at p. 1211 citing Cabalcetta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). "If there is even a possibility that a state court would find that the complaint states a

cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Id. at 1211-1212 citing Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983).

Defendants, Purdue and Abbott, argue in its' Notice of Removal, that the statute of limitations has run with regards to Defendants, Drs. Rubin and Cohen. Under Pennsylvania law, a cause of action for medical malpractice is governed by a two-year statute of limitations. 42 Pa.C.S. § 5524(2). However, Courts in Pennsylvania also apply a discovery rule, a judicially crated device, which "tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Crouse v. Cyclops Industries, 560 Pa. 394, 404, 745 A.2d 606, 611 (2000). **In applying the discovery rule, the determination of the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue is "best determined by the collective judgment, wisdom and experience of jurors."** Id. citing White v. Owens-Corning Fiberglas Corp., 447 Pa.Super. 5, 22, 668 A.2d 136, 144 (1995) *emphasis added*. Thus, according to the Supreme Court of Pennsylvania, "once the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Id.

In the present case, the harm caused to Plaintiff Michael Yurcic resulted from his addiction to OxyContin. (See Exhibit "B" at ¶ 84-90). Despite Defendants' claims, at no time prior to January 17, 2000 has Plaintiff alleged that he was addicted to OxyContin. (See Exhibit "B"). In fact, Plaintiff specifically avers that upon his admission to Caron Foundation, he had no true comprehension of his addiction as a disease. (See Exhibit "B" at ¶ 78). Thus, under the

discovery rule, the applicable statute of limitations tolls until the point where Michael Yurcic knew or reasonably should have known that he has been injured and that his injury has been caused by the ingestion of OxyContin, in this instance on or about January 17, 2000. Correspondingly, the statute of limitations ran on or about January 17, 2002, thirteen days after the Writ of Summons was filed in the Court of Common Pleas of Philadelphia County on January 4, 2002. (See Exibit "A").

Defendants', Purdue and Abbott, argument that Plaintiffs' claims against Defendants, Drs. Rubin and Cohen, are time barred, are meritless. First, Defendants, Purdue and Abbott, argue that the statute of limitations began to run upon Plaintiff's initial dose of OxyContin. (See Exhibit "C" at ¶ 4(e)). As discussed above, this is not the law in the Commonwealth of Pennsylvania. Defendants further argue that the Statute of Limitations for Defendants Drs. Rubin and Cohen began to run on March 5, 1999, March 8, 1999 or March 12, 1999 when Plaintiff took too many OxyContin pills shortly after his total right knee replacement. (See Exhibit "C" at ¶ 4(f)). Taking too many pills, especially when in pain and on prescribed narcotics, gives no indication whatsoever that one may be addicted to a drug. Finally, Defendants' infer that Plaintiff was admitted to Healthsouth Rehabilitation of Mechanicsburg, an acute rehabilitation hospital for drug addiction. (See Exhibit "C" at ¶ 4(e)). This is simply not the case. Plaintiff was transferred from Holy Spirit Hospital and admitted into Healthsouth Rehabilitation for complications from his total knee replacement and where he also received physical therapy. Further, as a patient at Healthsouth, Plaintiff was prescribed OxyContin by Defendant Dr. Cohen. (See Exhibit "B" at ¶ 66).

Defendants, Purdue and Abbott, also argue that inconsistent allegations in Plaintiffs' Complaint belie any basis for recovery by Plaintiffs against Drs. Rubin and Cohen. (See Exhibit

"C" at ¶ 4(g)). In Pennsylvania, causes of action and defenses may be pleaded in the alternative as provided by Pa.R.C.P. Rule 1020(c); therefore, this argument is meritless. Nevertheless, in *arguendo,* Drs. Rubin and Cohen, were both fully aware that Plaintiff took too many doses of OxyContin after his total knee replacement. In fact, Plaintiff stopped taking OxyContin for approximately ten days before Dr. Cohen resumed OxyContin therapy on March 15, 1999. (See Exhibit "B" at ¶ 57-66). Then, Dr. Rubin doubled Plaintiff's dosage of OxyContin on March 23, 1999. (See Exhibit "B" at ¶ 69-70). Regardless of what Defendants Purdue and Abbott did or did not do regarding the addictiveness of OxyContin, Defendants, Drs. Rubin and Cohen, had a duty to evaluate, examine, monitor, treat and attend to the Plaintiff in connection with the administration and continuing use of OxyContin. Defendants, Drs. Rubin and Cohen, breeched this duty and in doing so, injured Plaintiffs.

Based upon the above facts set forth in the Complaint, it is clear that this is not a case where a defendant has been fraudulently joined to defeat diversity of citizenship. Plaintiff, Michael Yurcic, sustained serious and permanent injury as a result of the actions of all Defendants. Defendants Purdue and Abbott have not met its high burden of proving fraudulent joinder in order to support removal to federal court without complete diversity.

Therefore, in accordance with 28 U.S.C.A. § 1332 and 28 U.S.C.A. §1447, Plaintiffs respectfully request that this Honorable Court remand this case to state court.

### C.  This Claim Should Be Remanded to State Court: Defendants Purdue and Abbott Have Not Met its Burden of Establishing Federal Question Jurisdiction

Congress has provided that the district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1441(a). "Federal removal statutes are to be strictly construed, and all doubts regarding removal are to be

resolved in favor of remand." Dawson v. Ciba-Geigy Corp., 145 F.Supp.2d 565 (D.N.J. 2001), citing Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Under the "well-pleaded complaint" doctrine, a case "arises under" federal law is therefore removable only if a federal claim exists on the face of the plaintiff's complaint. Dukes v. U.S.Healthcare, Inc., 57 F.3d 350, 353 (3d Cir. 1995).

The Supremacy Clause of the United States Constitution, art. VI, cl. 2 provides for federal preemption of state law. Preemption of state law may be implied by Congress, thus occupying an entire field of regulation (field preemption). Additionally, to the extent state law actually conflicts with federal law so that compliance with both is impossible or state law stands as an obstacle to a federal purpose, federal law may preempt state law (conflict preemption). McCallister v. Purdue Pharma L.P., 164 F.Supp.2d 783, 789 (S.D.W.Va. 2001). "Field and conflict preemption are interposed as defenses to state claims. . ." Id. "A federal defense to a plaintiff's state law cause of action ordinarily does not appear on the face of the well-pleaded complaint, and, therefore, usually is insufficient to warrant removal to federal court." Dukes, 57 F.3d at 353.

However, complete preemption provides for removal jurisdiction. McCallister, 164 F.Supp.2d at 789. Complete preemption only exists if: "(1) the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls, and (2) there is a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." Dawson, 145 F.Supp.2d at 569, citing Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 942 (3d Cir. 1988). The only basis for recharacterizing a state law claim as a federal claim removable to a district court under complete preemption is the utilization of this two part test.

Goepel v. National Postal Mail Handlers Union, 36 F.3d 306, 312 (3d Cir. 1994). If the two part test is met, the state law claim is "recharacterized" as a federal claim and removal is appropriate. Dawson, 145 F.Supp.2d at 569. To date, the Supreme Court has only found complete preemption to exist in a few circumstances, such as Section 502(a) of ERISA and Section 301 of the Labor Management Relations Act. Id.

In the present case, Plaintiffs' Complaint does not rely on federal law; all of the claims expressly stated by Plaintiffs are traditional state law tort and fraud claims. Defendants Purdue and Abbott argue four arguments in their feeble attempt to present Federal Question Jurisdiction before this Court, all of which have been previously rejected by a Federal Court. See, McCallister v. Purdue Pharma L.P., 164 F.Supp.2d 783 (S.D.W.Va. 2001). First, Defendants Purdue and Abbott maintain since OxyContin is a highly regulated Schedule II controlled substance, every aspect of the manufacture, promotion, and distribution of OxyContin is subject to comprehensive federal regulation. (See Exhibit "C" at ¶ 5(a)). Second, Defendants contend that Plaintiffs essentially assert claims challenging the regulatory control of the Federal Food, Drug, and Cosmetic Act ("FDCA"). (See Exhibit "C" at ¶ 5(b)). Third, Defendants assert that Plaintiffs' allegation relating to the labeling of OxyContin constitute a substantial question of federal law. (See Exhibit "C" at ¶ 5(c)). Finally, the Defendants claim that Plaintiffs assert claims effectively seeking to challenge the decision by federal regulatory authorities to authorize the manufacture and distribution of OxyContin despite the fact that the Drug Enforcement Administration, pursuant to the Controlled Substances Act, controls the amount of oxycodone that Purdue is permitted to purchase each year. (See Exhibit "C" at ¶ 5(d)).

The first and fourth arguments will be addressed simultaneously. Like the present case, in McCallister, Defendants argue that all aspects of OxyContin manufacture and distribution are

federally controlled because it is a Schedule II drug. McCallister, 164 F.Supp.2d at 792. Further, Purdue states in this Notice of Removal and in McCallister that the Government controls the amount of OxyContin that may be produced. Id. Like McCallister, Defendants have failed in the present case to characterize the type of removal preemption claimed. In McCallister, the court determined that Defendants were alluding to field preemption. Id. In other words, Defendants are claiming that such regulation is necessarily federal because the government has so entirely occupied the field of OxyContin regulation. Id. The McCallister court found that this broad argument, even if correct, at best establishes a defensive preemption, not complete preemption, which is necessary for removal jurisdiction. Id. Furthermore, the Third Circuit has held that a federal defense to a plaintiff's state law cause of action does not ordinarily appear on the face of the well-pleaded complaint and as such does not warrant removal to federal court. Dukes, 57 F.3d at 353. Thus, Defendants Purdue and Abbott's points one and four fail to achieve a federal question for removal.

     Defendants Purdue and Abbott next argue that either the FDCA or Controlled Substance Act governed every action they took of which Plaintiffs complain. However, the FDCA or the Controlled Substances Act completely preempts Plaintiffs' state law claims only where it provides a private cause of action. See Dawson, 145 F.Supp.2d at 569. The FDCA does not provide for private civil enforcement that would include Plaintiffs' claims. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 814, 106 S.Ct. 3229 (1986). In McCallister, after careful review of the Controlled Substances Act, 21 U.S.C. §§ 801-971, the court found that there was no Congressional intent to create a private civil right under the Act, thus preventing removal. McCallister, 164 F.Supp.2d at 793.

     Defendants' then assert a change in the warning label constitutes a substantial question of

federal law. (See Exhibit "C" at ¶ 5(c)). Plaintiffs' Complaint does not request that Defendants Purdue and Abbott change the warning label. (See Exhibit "C" at ¶ 117-119). In Medtronic v. Lohr, 518 U.S. 470, 116 S.Ct. 2240 (1996), the Supreme Court held that plaintiff's state claims based on allegedly defective labeling and manufacturing of pacemaker devices were not preempted by the federal labeling and manufacturing regulations. Id. at 501, see also, Dawson, 145 F.Supp.2d at 573.

In the present case, Plaintiffs' claims rely solely on traditional state tort law, and there is no federal cause of action that supplants such claims. (See Exhibit "H"). Stated differently, the federal regulations regarding labeling are not a critical element to plaintiffs' claims against Defendants Purdue and Abbott. In this instance, Defendants' failure to disclose relevant data to the FDA effectively defrauds Pennsylvania doctors and the public by failing to warn them of pharmaceutical product hazards. Defendants Purdue and Abbott raise the issue of labeling as a defensive preemption, which as stated previously does not appear in a well-pleaded complaint and therefore does not warrant removal to federal court.

Based upon the above facts set forth in the Complaint, it is clear that this is not a case where Plaintiff has alleged a federal question on the face of a well-pleaded complaint. Plaintiff, Michael Yurcic, sustained serious and permanent injury as a result of the actions of all Defendants. Defendants Purdue and Abbott have not met its high burden of proving that this civil action arises under the Constitution, laws, or treaties of the United States in order to support removal to federal court. Therefore, Plaintiffs respectfully request that this Honorable Court remand this case to state court.

### IV.   CONCLUSION

Based upon the foregoing statutory authority and case law, it is clear that Defendant

improperly removed this case to federal court when (1) complete diversity does not exist because a claim remains against Defendants, Morton Rubin, M.D. and Howard R. Cohen, M.D., in state court, (2) Defendants Purdue and Abbott have not met its burden of establish fraudulent joinder of Defendants, Morton Rubin, M.D. and Howard R. Cohen, M.D., to support removal under federal law, and (3) Defendants Purdue and Abbott have not met its burden of establishing federal question jurisdiction. Defendants Purdue and Abbott filed this Notice of Removal in an attempt to harass Plaintiffs and cause undue delay in the litigation of this trial.  Plaintiffs respectfully request that this case be remanded to state court and Plaintiffs further request an award of attorneys' fees and costs associated with filing this Motion to Remand.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court remand this case to state court in accordance with 28 U.S.C.A. § 1331, 28 U.S.C.A. § 1332 and 28 U.S.C.A. §1447.

                    Respectfully submitted,

                    **ANAPOL, SCHWARTZ, WEISS,**
                      **COHAN, FELDMAN & SMALLEY, P.C.**

**BY:** _____
      SOL H. WEISS, ESQUIRE
      TRACY A. FINKEN, ESQUIRE
      MARC S. STOLEE, ESQUIRE
      Attorneys for Plaintiffs
      I.D. Nos. 15925/82258/87983
      1900 Delancey Place
      Philadelphia, PA 19103
      (215) 735-2098

**DATED:** _____