**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL and KELLY YURCIC, : | |
| : | |
| Plaintiffs, : | |
| : | Case No. 02-CV-3737 |
| v. : | |
| : | |
| PURDUE PHARMA, L.P., PURDUE : | |
| PHARMA, INC., PURDUE FREDERICK : | |
| COMPANY, ABBOTT LABORATORIES, : | |
| ABBOTT LABORATORIES, INC., : | |
| MORTON RUBIN, M.D., and HOWARD : | |
| R. CORBIN, M.D., : | |
| : | |
| Defendants. : | |
| : | |

<u>**BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE**</u>
<u>**PURSUANT TO TITLE 28 U.S.C. § 1404(a)**</u>

AKIN, GUMP, STRAUSS, HAUER &
FELD, L.L.P.

By_____
    Edward F. Mannino (Atty. I.D. #04504)
    David L. Comerford (Atty. I.D. #65969)
    Katherine Menapace (Atty. I.D. #80395)
    Jason A. Snyderman (Atty. I.D. #80239)
    One Commerce Square
    2005 Market Street, Suite 2200
    Philadelphia, Pennsylvania  19103
    (215) 965-1200

    Attorneys for Defendants
    Purdue Pharma L.P.
    Purdue Pharma Inc.
    The Purdue Frederick Company

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................1

ARGUMENT ...........................................................................................................3

    A.    THE MIDDLE DISTRICT OF PENNSYLVANIA IS A
           PROPER VENUE........................................................................................3

    B.    PLAINTIFFS' CHOICE OF FORUM IS NOT CONTROLLING..............4

    C.    THE INTERESTS OF JUSTICE AND THE CONVENIENCE
           OF THE PARTIES BOTH WARRANT TRANSFER TO THE
           MIDDLE DISTRICT OF PENNSYLVANIA ............................................5

           1.    All of the Relevant Private Interest Factors Point
               to the Middle District ......................................................................6

           2.    The Public Interest Factors Also Warrant a Transfer
               to the Middle District of Pennsylvania ...........................................8

CONCLUSION.......................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Affymetrix, Inc. v. Synteni Inc.,* 28 F. Supp. 2d 192 (D. Del. 1998) ...................................6

*American Littoral Society v. United States Environmental Protection Agency*, 943
    F. Supp. 548 (E.D. Pa. 1996) .......................................................................8

*Colandrea v. National Railroad Passenger Corp.*, 2000 U.S. Dist. LEXIS 1395
    (E.D. Pa. 2000)...................................................................................4, 9

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)....................................................6

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ...................................5

*Khaaliq v. Pennsylvania State University*, 2002 U.S. Dist. LEXIS 9251
    (E.D. Pa. 2002)................................................................................5, 8

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988) ...................................4

*Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615 (E.D. Pa. 2000) ...................................5, 8

*Matt v. Baxter Healthcare Corp.*, 74 F. Supp. 2d 467 (E.D. Pa. 1999)...............................4

*O'Laughlin v. Consolidated Rail Corp.*, 1999 U.S. Dist. LEXIS 1782
    (E.D. Pa. 1999)...............................................................................3, 8

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)...................................................6

*Providian Life and Health Ins. Co. v. CUNA Mutual Insurance Society*,
    1996 U.S. Dist. LEXIS 4109 (E.D. Pa. 1996) ...............................................3

*Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980)...................................6

*Solomon v. Continental American Life Ins.*, 472 F.2d 1043 (3d Cir. 1973) ......................5

*Tranor v. Brown*, 913 F. Supp. 388 (E.D. Pa. 1996) .........................................4

*Tyler v. Rental Service Corp.*, 2002 U.S. Dist. LEXIS 1828 (E.D. Pa. 2002).................5, 9

*Umali v. American Skiing Company*, 2001 U.S. Dist. LEXIS 15743
    (E.D. Pa. 2001).........................................................................5, 6, 9

## **STATUTES**

28 U.S.C. § 1391(a)(2)...................................................................................................4

28 U.S.C. § 1391(b)(1) .................................................................................................4

28 U.S.C. § 1391(b)(2) .................................................................................................4

28 U.S.C. § 1391(c) .....................................................................................................4

28 U.S.C. § 1404(a) ...............................................................................................1, 3, 6

## **RULES**

Fed. R. Civ. P. 45(b)(2)...............................................................................................8

Defendants, Purdue Pharma L.P., Purdue Pharma Inc. and The Purdue Frederick

Company (collectively the "Purdue Defendants"), by and through their counsel, file this Brief in

Support of Motion to Transfer Venue Pursuant to Title 28 U.S.C. § 1404(a).[1]

## INTRODUCTION

It would serve the interests of justice and be more convenient, for all parties and all

potential witnesses, if this case were transferred to the Middle District of Pennsylvania.

Plaintiffs, Michael and Kelly Yurcic, have filed a six count Complaint against a host of

pharmaceutical defendants and medical doctors alleging various theories of negligence, breach of

warranty, fraud and medical malpractice in connection with the development, distribution and

prescription of OxyContin® Tablets ("OxyContin"), a federally-approved opioid prescription

pain medication.[2]

The Complaint gravitates around Michael Yurcic's alleged use and addiction to

OxyContin.[3]  On the face of the Complaint, it is averred that both Plaintiffs reside in Harrisburg,

Pennsylvania, which is located in the Middle District of Pennsylvania.  See Complaint, ¶1.

Plaintiffs allege that in 1996, Mr. Yurcic was first prescribed OxyContin for pain-management

---

[1]  This case was originally filed in the Court of Common Pleas of Philadelphia County and timely removed to this Court on the bases of diversity jurisdiction and original federal question jurisdiction.  On July 2, 2002, Plaintiffs filed a Motion to Remand this case back to the Court of Common Pleas of Philadelphia County.  That motion is currently pending.

[2]  The allegations against the physician Defendants state that both doctors negligently treated Mr. Yurcic which caused him to suffer from an addiction to OxyContin.  However, the Complaint states that the physician Defendants only treated Mr. Yurcic until the Fall of 1999, thus any claims against the doctors are now time-barred.  The fraudulent joinder of these Defendants was one of the bases for removing this case to federal court.  Whether the treating physicians remain parties to this action or not, however, they are critical to any transfer analysis since they will no doubt be important fact witnesses.

[3]  All of the facts relate directly to Plaintiff Michael Yurcic.  His wife, Plaintiff Kelly Yurcic, is a named Plaintiff solely as a result of her purported loss of consortium claim found at Count VI.  See Complaint, ¶¶ 147-155.

1

resulting from a knee injury.  This first prescription is alleged to have been made by Defendant

physician, Morton Rubin, M.D., whose practice is located in Mechanicsburg, Pennsylvania,

which also is located in the Middle District of Pennsylvania.  Id. at ¶14.  The Complaint alleges

that Dr. Rubin continued to prescribe OxyContin for pain relief from 1996 through 1999, when

Dr. Rubin referred Mr. Yurcic to co-defendant physician Howard R. Cohen, M.D., as a result of

a suspected overdose of OxyContin.  Id. at ¶59.  Like Dr. Rubin, Dr. Cohen's practice is also

located in Mechanicsburg, Pennsylvania.  Id. at ¶16.  Plaintiffs claim that Dr. Cohen

recommended that Mr. Yurcic check into Holy Spirit Hospital, also located in the Middle District

of Pennsylvania, for treatment.  Plaintiff states he did so on March 8, 1999. Id. at ¶61.

Mr. Yurcic claims to have remained under Dr. Cohen's care during and after his

discharge from Holy Spirit Hospital and his subsequent admission to Healthsouth Rehabilitation

of Mechanicsburg, the first of three treatment centers he allegedly used.  Id. at ¶¶62-65.  After

his discharge from Healthsouth, Plaintiffs allege that one or both Drs. Rubin and Cohen

continued to prescribe OxyContin for a period of approximately five months.  Id. at ¶¶ 66-75.  In

November, 1999, Mr. Yurcic claims to have seen Dr. Albert Zanetti, who allegedly also

prescribed OxyContin in connection with an alleged six month narcotic withdrawal plan.  Id. at

75.  Dr. Zanetti resides in Harrisburg, in the Middle District of Pennsylvania.  See Exhibit "A,"

attached hereto.  Failing to adhere to the withdrawal plan, and after a consultation with Dr.

Zanetti, Mrs. Zanetti and Zanetti's office manager, Mr. Yurcic allegedly decided to enter into an

inpatient detoxification treatment facility.  Id. at ¶¶ 75-77.   Mr. Yurcic claims that he enrolled

in a twenty-one day treatment plan at the Caron Foundation, located in Wernersville,

Pennsylvania.  Wernersville, Pennsylvania is located on the western tip of Berks County.

Although located in the Eastern District of Pennsylvania, it is closer to the Middle District of

Pennsylvania Courthouse in Harrisburg (43.3 miles) than it is to the Eastern District of

Pennsylvania Courthouse (67.1 miles).  See http://maps.yahoo.com. Upon his discharge from the

Caron Foundation, Mr. Yurcic claims that he began individual and group therapy at Mazzitti &

Sullivan, a Harrisburg-based treatment center.  Id. at ¶¶ 80-82.

There is no allegation in the Complaint relating in any way to any event or person located

in the Eastern District of Pennsylvania.  All of the operative facts, and all of the Pennsylvania-

based parties, including the Plaintiffs themselves, are located in Middle District of Pennsylvania.

Accordingly, this case should be transferred to the Middle District of Pennsylvania pursuant to

Title 28 U.S.C. § 1404(a).

## ARGUMENT

A civil action may be transferred to any other district where the suit might have been

brought, if such a transfer is in the interests of justice or for the convenience of the parties or the

witnesses in the case.  See 28  U.S.C. § 1404(a).  The Third Circuit, following guidance from the

United States Supreme Court, has identified a series of factors for the District Court to consider

when ruling on a motion to transfer venue.  In this case, every important factor militates in favor

of transferring this case to the Middle District of Pennsylvania, where all of the operative events

took place and where Plaintiffs themselves both reside.

### A.    THE MIDDLE DISTRICT OF PENNSYLVANIA IS A PROPER VENUE

A district court is granted broad discretion to decide whether to transfer an action to a

different venue.  Providian Life and Health Ins. Co.v. CUNA Mutual Insurance Society, 1996

U.S. Dist. LEXIS 4109, at *6 (E.D. Pa. 1996).  When deciding a Motion to Transfer, the Court

must first determine whether the proposed alternative forum is a proper venue.  O'Laughlin v.

3

Consolidated Rail Corp., 1999 U.S. Dist. LEXIS 1782, at *2 (E.D. Pa. 1999) (Kauffman, J.)

(citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988)).

A civil action where jurisdiction is not founded solely on the basis of diversity, may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred.  See 28 U.S.C. § 1391(b)(2).[4]  In this case, it is undisputed that most, if not all, of the relevant events leading to the Plaintiffs' alleged injuries took place in the Harrisburg-Mechanicsburg area, both located within the Middle District of Pennsylvania.  None of the parties to this action are located in the Eastern District of Pennsylvania.  However, both Plaintiffs live in the Middle District; both doctors Rubin and Cohen maintain their practices and treated Mr. Yurcic in the Middle District; and most of Mr. Yurcic's alleged post-addiction treatment was provided in the Middle District.  These facts make the Middle District an appropriate transferee district.  See Tranor v. Brown, 913 F. Supp. 388 (E.D. Pa. 1996) (transferring a medical malpractice action to the Middle District of Pennsylvania because the alleged malpractice occurred there).  Moreover, all of the pharmaceutical Defendants are subject to personal jurisdiction in the Middle District, thus making it a proper venue.  See 28 U.S.C. §§ 1391(c) and 1391(b)(1).  Since this case could have been originally filed in the Middle District of Pennsylvania, it is an appropriate venue for transfer.

**B.    PLAINTIFFS' CHOICE OF FORUM IS NOT CONTROLLING**

Where the forum chosen is not the home of the plaintiff and few of the operative facts occurred there, the plaintiff's choice of venue is entitled to less weight.  Colandrea v. National Railroad Passenger Corp., 2000 U.S. Dist. LEXIS 1395, at *3 (E.D. Pa. 2000) (Kauffman, J.); Matt v. Baxter Healthcare Corp., 74 F. Supp. 2d 467, 470 (E.D. Pa. 1999).  Plaintiffs both reside

---

[4]  This same criteria would also apply if jurisdiction were based solely on diversity.  See 28 U.S.C. § 1391(a)(2).

4

in the Middle District of Pennsylvania and not in their chosen district.  Moreover, virtually none

of the operative facts occurred in the Eastern District of Pennsylvania.  All three of the treating

physicians referenced in the Complaint reside in the Middle District of Pennsylvania and all of

their records are located there.  This is also where Mr. Yurcic was first prescribed and allegedly

became addicted to OxyContin and this is where the bulk of his purported addiction therapy was

received.  It seems the only connection Plaintiffs have to the Eastern District is that their lawyers

are located here.  Courts in this Circuit have consistently held that the location and convenience

of counsel is not to be considered when conducting a transfer analysis.  Solomon v. Continental

American Life Ins., 472 F.2d 1043, 1047 (3d Cir. 1973); Tyler v. Rental Service Corp., 2002

U.S. Dist. LEXIS 1828, at *4 n.2 (E.D. Pa. 2002); see also Khaaliq v. Pennsylvania State

University, 2002 U.S. Dist. LEXIS 9251 (E.D. Pa. 2002) (transferring case to the Middle District

of Pennsylvania because plaintiff has no connection to the Eastern District except that her

attorney's office was located there); Lindley v. Caterpillar, Inc., 93 F. Supp. 2d 615 (E.D. Pa.

2000) (transferring case to Florida because plaintiff's only connection to this district was the

location of his attorney).

**C.   THE INTERESTS OF JUSTICE AND THE CONVENIENCE OF THE
PARTIES BOTH WARRANT TRANSFER TO THE MIDDLE DISTRICT
OF PENNSYLVANIA**

Since the first test is met (the transferee forum is a proper venue), the Court must then

look at all relevant factors to determine whether, on balance, the litigation would more

conveniently proceed and the interests of justice would be better served by a transfer to a

different forum.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  When

balancing all relevant factors, the weaker the connection between the forum and either the

plaintiff or the lawsuit, the greater the propriety of transfer.  Umali v. American Skiing

Company, 2001 U.S. Dist. LEXIS 15743, at *4 (E.D. Pa. 2001) (Kauffman, J.) (quoting

Affymetrix, Inc. v. Synteni Inc., 28 F. Supp. 2d 192, 199 (D. Del. 1998)).  Here, there is little or

no connection to the forum selected by the Plaintiffs.

      The United States Supreme Court has identified two categories of factors to consider

when deciding a motion to transfer including private interest factors affecting the convenience of

the litigants, and public interest factors affecting the convenience of the forum.  Piper Aircraft

Co. v. Reyno, 454 U.S. 235, 241 (1981); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09

(1947).[5]  Consideration of all of the "private interest" factors counsels in favor of a transfer of

this case to the Middle District of Pennsylvania.  The list of private interest factors includes:

> The relative ease of access to sources of proof; availability of compulsory process
> for attendance of unwilling, and the cost of obtaining attendance of willing
> witnesses; possibility of view of the premises, if view would be appropriate to the
> action; and all other practical problems that make trial of a case easy, expeditious
> and inexpensive.

Umali, 2001 U.S. Dist. LEXIS 15743, at *5 (quoting Gulf Oil and Piper Aircraft, *supra*).

      The list of public interest factors includes "the administrative difficulties flowing from

court congestion; the 'local interest in having localized controversies decided at home';… and

the unfairness of burdening citizens in an unrelated forum with jury duty."  Id at *5-6.  All of the

relevant private and public interest factors favor a transfer of this case to the Middle District.

      1.     **All of the Relevant Private Interest Factors Point to the Middle District**

      The private interest factors all favor transfer to the Middle District of Pennsylvania. The

vast majority of the witnesses reside in the Middle District.  In addition to both Plaintiffs and the

---

[5]  While Gulf Oil related to a forum non conveniens analysis and not a venue analysis, this Court has recognized
that under § 1404(a), federal courts are permitted to grant transfers on a lesser showing of inconvenience than
normally required under the common law doctrine of forum non conveniens.  Umali, 2001 U.S. Dist. LEXIS 15743,
at *6 n.2 (quoting Reyno v. Piper Aircraft Co., 630 F.2d 149, 157 n.16 (3d Cir. 1980)).

two physician Defendants, the Complaint also references Dr. Zanetti, his wife and his office manager, all of whom reside and/or work in the Middle District of Pennsylvania.[6]  Additionally, Mr. Yurcic received treatment at Holy Spirit Hospital, Healthsouth Rehabilitation of Mechanicsburg, and the Caron Foundation, the first two of which are located in the Middle District and the third is located closer to the Middle District Courthouse in Harrisburg than to the Eastern District Courthouse in Philadelphia.[7]  Thus, the Middle District Courthouse is more convenient than the Eastern District Courthouse for witnesses who have pertinent knowledge regarding Mr. Yurcic's treatment and medical history.

Defense witnesses also have more of a connection to the Middle District.  None of the Purdue Defendants are located in Pennsylvania.  Thus, to the extent any corporate or scientific witnesses are required to give testimony, they are all located out-of-state and the Middle District is as convenient a forum to them as the Eastern District.  Should testimony from Purdue sales representatives be sought, nearly all of the sales personnel who had any contact with any of Mr. Yurcic's treating physicians met with them in the Middle District of Pennsylvania while based in that territory.[8]

Because most, if not all, of the operative facts occurred in the Middle District, that venue will also be closer to every available source of proof.  For example, most or all of the Plaintiffs' medical records will be located in the Middle District at either Mr. Yurcic's physicians' offices or the centers where he allegedly received addiction treatment.  Similarly, any pharmacy where Mr. Yurcic's prescriptions were filled will likely also be in the Middle District of Pennsylvania.

---

[6]  See Exhibit "A" attached hereto.

[7]  As referenced *supra* at 3, while the Caron Foundation is located on the western-most edge of the Eastern District, it is significantly closer to Harrisburg than it is to Philadelphia.

[8]  An affidavit from the Purdue Defendants is attached hereto as Exhibit "B" and incorporated herein.

Those witnesses who could testify to the effects of the alleged addiction as well as those individuals with knowledge about how Mr. Yurcic obtained OxyContin will all be located in the Middle District.  The location of these various sources of proof is critical because Federal Rule of Civil Procedure 45(b)(2) places a 100 mile limit on the service of subpoenas, which means that the Eastern District may be too far away to subpoena critical witnesses whereas every single Pennsylvania witness anticipated from any party will almost certainly be within 100 miles of the Middle District.  See Khaaliq, 2002 U.S. Dist. LEXIS 9251, at *6 (because most of the fact-witnesses will likely be in or near Centre County, access to sources of proof will be optimized by transferring the case to the Middle District); Lindley, 93 F. Supp. 2d at 618 (it is generally more preferable to prosecute an action where relevant witnesses can be compelled to attend).

### 2.  The Public Interest Factors Also Warrant a Transfer to the Middle District of Pennsylvania

A consideration of all relevant public interest factors also warrants a transfer.  At its core, this is a medical malpractice and products liability case wherein Middle District residents are suing Middle District physicians for injuries incurred as a result of actions occurring in the Middle District.[9]  It is hard to imagine a more Middle District-based litigation.  This Court has held that the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation should also be considered when deciding whether to transfer a case.  American Littoral Society v. United States Environmental Protection Agency, 943 F. Supp. 548, 550 (E.D. Pa. 1996); see also O'Laughlin v. Consolidated Rail Corp., 1999 U.S. Dist. LEXIS 1782, at *6 (E.D. Pa. 1999) (Kauffman, J.) (transferring a personal injury case to the Western District of Pennsylvania where jurors would have a real and substantial interest in

---

[9]   While it is certainly true that the pharmaceutical Defendants are also named parties, since they are all located outside Pennsylvania, their relationship to either the Middle or Eastern District would be the same.

resolving a local conflict).  For instance, in <u>Tyler v. Rental Service Corp.</u>, *supra*, this Court

transferred a personal injury case from the Eastern District to the Middle District of

Pennsylvania.  Because the Eastern District was not the plaintiff's home district nor the locus of

any operative facts, and no pertinent records or witnesses were located here, the Court held that it

would be improper for Eastern District jurors to resolve the conflict.  In transferring, the Court

reasoned that:

> This district has no relationship to or local interest in deciding this controversy.
> Indeed, jurors here would likely wonder why they had been required to resolve a
> dispute between a foreign corporation and a Clearfield County resident, employed
> from Centre County, arising from an accident in North Carolina.

<u>Tyler</u>, 2002 U.S. Dist. LEXIS 1828, at *8.  Holding that the absence of any connection between

this litigation and this district was "far more significant" than the plaintiff's choice of forum, the

court granted the defendant's motion to transfer so that the case would be tried in a district with

some affinity for those involved and some logical interest.  <u>Id.</u>

The same rationale applies in this case.  If this case remains in the Eastern District, jurors

here would be asked to resolve a dispute between Harrisburg residents, their Mechanicsburg-

based doctors and foreign corporations.  Middle District residents have much more of a

connection to, and local interest in, the outcome of these proceedings thus warranting a transfer

to that district.  <u>See</u> <u>Umali</u>, 2001 U.S. Dist. LEXIS 15743, at *7 (Kauffman, J.) (transferring the

case so it "will be decided by a jury drawn from the community where Plaintiff's injuries

allegedly occurred."); <u>Colandrea</u>, 2000 U.S. Dist. LEXIS 1395, at *6 (Kauffman, J.) (same).

Accordingly, the interests of justice suggest that this case be transferred to the Middle District.

Every private and public interest factor the Court is required to consider militates in favor

of a transfer to the Middle District of Pennsylvania.  A transfer would be just because the Middle

District has every connection to this case and the Eastern District has none; a transfer would also

be more convenient for potential witnesses and every party involved in this case, including

Plaintiffs themselves.

## **CONCLUSION**

For each of the foregoing reasons, the Purdue Defendants respectfully request that this

case should be transferred immediately to the Middle District of Pennsylvania.

AKIN, GUMP, STRAUSS, HAUER &
FELD, L.L.P.


By_____
   Edward F. Mannino (Atty. I.D. #04504)
   David L. Comerford (Atty. I.D. #65969)
   Katherine Menapace (Atty. I.D. #80395)
   Jason A. Snyderman (Atty. I.D. #80239)
   One Commerce Square
   2005 Market Street, Suite 2200
   Philadelphia, Pennsylvania  19103
   (215) 965-1200

    Attorneys for Defendants
    Purdue Pharma L.P.
    Purdue Pharma Inc.
    The Purdue Frederick Company


Dated:  July 11, 2002

# **CERTIFICATE OF SERVICE**

I, Jason A. Snyderman, Esquire, hereby certify that a copy of the foregoing Brief in Support of Motion to Transfer Venue Pursuant to Title 28 U.S.C. § 1404(a) was mailed to the following by ordinary U.S. mail, postage prepaid, this 11th day of July, 2002:

Sol H. Weiss, Esquire
Marc Stolee, Esquire
Anapol, Schwartz, Weiss, Cohan,
Feldman & Smalley, P.C.
1900 Delancey Place
Philadelphia, PA 19103

Joseph E. O'Neil, Esquire
Lavin, Coleman, O'Neil, Ricci
Finarelli & Gray
510 Walnut Street, Suite 1000
Philadelphia, PA 19106

Allan H. Starr, Esquire
Stephan R. Paul, Esquire
White & Williams, LLP
1800 One Liberty Place
Philadelphia, PA 19103

Angelo L. Scaricamazza, Jr., Esquire
Kenneth Fair, Esquire
Naulty, Scaricamazza & McDevitt
Suite 1600 John F. Kennedy Blvd.
Philadelphia, PA 19103

_____
Jason A. Snyderman