IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL and KELLY YURCIC, | : | |
| Plaintiffs | : | CIVIL ACTION |
| v. | : | |
| | : | |
| PURDUE PHARMA, L.P., PURDUE PHARMA, | : | NO. 02-3737 |
| INC., PURDUE FREDERICK COMPANY, | : | |
| ABBOTT LABORATORIES, ABBOTT | : | |
| LABORATORIES, INC., MORTON RUBIN, | : | |
| M.D., and HOWARD R. CORBIN, M.D. | : | |
| Defendants | : | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO PURDUE'S MOTION TO TRANSFER VENUE

Plaintiffs Michael and Kelly Yurcic, by and through their attorneys respectfully submit this memorandum of points and authorities in Opposition to Purdue's Motion to Transfer Venue Pursuant to Title 28 U.S.C. § 1404(a).

## I.   INTRODUCTION

On July 2, 2002, Plaintiffs filed a Motion to Remand this case back to the Court of Common Pleas of Philadelphia County. Although the Motion to Remand is still pending, Purdue filed this Motion to Transfer Venue. Purdue Defendants' Motion to Transfer Venue is inexplicably linked to Plaintiffs' Motion to Remand, because the removal of Defendant Doctors, Rubin and Cohen, as party defendants will defeat Purdue's Motion to Transfer and with the Defendant Doctors remaining as party defendants, diversity is defeated and Plaintiffs' Motion to Remand must prevail.

## II.   PROCEDURAL HISTORY

On January 4, 2002, Plaintiffs Michael and Kelly Yurcic initiated this litigation by filing of a Writ of Summons in the Court of Common Pleas of Philadelphia County. On or about

January 14, 2002, Defendants Purdue and Abbott were served with a copy of the Writ of Summons and the Civil Cover Sheet. On January 22, 2002, a Praecipe and Rule to File a Complaint was filed by Defendant Morton Rubin, M.D. ("Rubin"). On or about January 23, 2002, a Praecipe and Rule to File a Complaint was filed by Defendant Howard R. Cohen, M.D. ("Cohen")(incorrectly identified as Howard R. Corbin, M.D.). On February 8, 2002, Defendants Rubin and Cohen agreed to give plaintiffs a twenty day extension to file the Complaint.

On March 1, 2002, Plaintiffs' counsel learned that Defendant Rubin was insured by PHICO Insurance Company, which had protection from litigation as provided by Judge John W. Herron's Order dated February 6, 2002. That same day, Plaintiffs corresponded with Defendants Rubin and Cohen, stating that the insolvency of PHICO stayed the time in which to file a complaint. Upon information and belief the PHICO Stay of Proceedings was lifted on May 3, 2002. On May 17, 2002, after the Stay of Proceedings was lifted, Defendants Purdue and Abbott filed a Praecipe and Rule to File a Complaint.

On May 31, 2002, Plaintiffs Michael and Kelly Yurcic filed a Complaint in the Court of Common Pleas of Philadelphia County. (A true and correct copy of Plaintiffs' Complaint is attached hereto as Exhibit "A"). The Complaint states a negligence claim against Defendants, Purdue and Abbott, and a medical malpractice claim against Defendants Rubin and Cohen, both Pennsylvania residents and citizens, arising from injuries sustained by Plaintiff, Michael Yurcic, caused by his ingestion of the narcotic drug OxyContin.

On June 6, 2002, Defendant Cohen filed preliminary objections to Plaintiffs' Complaint based upon lack of factual specificity with regard to the medical malpractice claim. On June 12, 2002, before Plaintiff responded to Defendant Cohen's preliminary objections, Defendants Purdue and Abbott filed a Notice of Removal of the state court action to federal court based

2

primarily upon diversity jurisdiction and secondarily upon a meritless federal question jurisdiction argument. On July 2, 2002, Plaintiffs filed a Motion to Remand this case back to the Court of Common Pleas of Philadelphia County. This motion is currently pending before this Court.

### III.    STATEMENT OF FACTS

This is a claim for medical malpractice and negligence relating to the sale and prescription of OxyContin to Plaintiff Michael Yurcic. (See Exhibit "A"). On June 12, 2002, Defendants Purdue and Abbott filed a Notice of Removal alleging that Defendant Doctors, Rubin and Cohen, were fraudulently joined, based on a weak and distorted statute of limitations argument, removing Defendant Doctors as parties to this action. It is undisputed that Defendant Doctors' practices are located in the Middle District of Pennsylvania. It is also undisputed that Defendants Purdue and Abbott's principle places of business are located outside of the Commonwealth of Pennsylvania, Connecticut and Illinois, respectively.

At all relevant times hereto, Defendant Doctors, Rubin and Cohen, prescribed OxyContin to Plaintiff Michael Yurcic. (See Exhibit "A"). At no time while Plaintiff was dosed with OxyContin, was he aware of his addiction to OxyContin, nor did either Defendant Doctors indicate that he might be addicted to OxyContin.

This case is predicated on the injuries Plaintiff sustained resulting from his addiction to OxyContin. On December 27, 1999, Plaintiff was admitted to the Caron Foundation, located in Wernersville, Pennsylvania, which is in the Eastern District of Pennsylvania, for treatment of his addiction to OxyContin. (Id. at ¶ 76-77). Upon his admission to the Caron Foundation, Plaintiff had no true comprehension of his addiction as a disease. (Id. at ¶ 78). However, upon his release on January 17, 2000, Plaintiff recognized that he was addicted to OxyContin. (Id. at ¶ 80-83).

IV.    **LEGAL ARGUMENT**

Under 28 U.S.C. §1404(a) a civil action may be transferred to another district if such transfer is in the interest of justice or for the convenience of the parties and the witnesses in the case. The burden of demonstrating the need for transfer rests with the movant, and in ruling on the movant's motion, "**the plaintiff's choice of venue should not be lightly disturbed.**" See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). In Gulf Oil v. Gilbert, the Supreme Court announced the relevant public and private factors to be considered when construing a motion to transfer. See Gulf Oil v. Gilbert, 330 U.S. 501 (1947). The Third Circuit has interpreted those private factors to include:

1. plaintiff's forum preference as manifested in the original choice;
2. the defendant's preference;
3. whether the claim arose elsewhere;
4. the convenience of the parties as indicated by their relative physical and financial condition;
5. the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the for a; and
6. the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

See Jumara, 55 F.3d at 879. The public factors include: the enforceability of the judicial decision; court congestion; the local interest in deciding local controversies; practical considerations that could make the trial easy, expeditious, or inexpensive; and the imposition of jury duty on citizens with no relation to the case. Id.

The decision whether to transfer is left to the sound discretion of the district court; however, the burden of demonstrating the desirability of transfer lies with the defendant. See SmithKline Beecham Corp. v. Apotex Corp., 2000 WL 15074, at *2 (E.D.Pa. 2000)(Kauffman, J.). Thus, unless the balancing test of Jumara, is strongly in favor of the defendant, the plaintiff's choice of forum should predominate. Id. Plaintiff does not dispute that the Middle District of

4

Pennsylvania is an alternate venue; however, it is not appropriate to transfer venue when balancing the Jumara factors.

    A.    **PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO SUBSTANTIAL DEFERENCE**

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." See Shutte v. Armco Steele Corp., 431 F.2d 22, 24 (3d Cir. 1970). The burden is on the defendant to establish that the balancing of proper interests weigh in favor of the transfer, and unless the balance of convenience of the parties is strongly in favor of the movant, the plaintiff's choice of forum should prevail. Id. at 25. However, where the "**chosen forum has no significant contact with the underlying cause of action**," Williams v. Monroe Emergency Physicians, P.C., 1999 WL 124398, at *2 (E.D.Pa. 1999)(Kauffman, J.) citing Schmidt v. Leader Dogs for the Blind, Inc., 544 F.Supp. 42, 47 (E.D.Pa. 1982)(emphasis added) and a locale that is not the plaintiff's residence, Umali v. American Skiing, 2001 WL 1175132 (E.D.Pa. 2001)(Kauffman, J.) the plaintiff's choice carries less weight.

To support their argument the Purdue Defendants state: "[t]here is no allegation in the Complaint relating in any way to any event or person located in the Eastern District of Pennsylvania. All of the operative facts, . . . are located in Middle District of Pennsylvania." (See Exhibit "C," Purdue Defendants' Brief in Support of Motion to Transfer Venue, pg. 3). The Purdue Defendants, however, look past Plaintiff's enrollment in a twenty-one day treatment plan at the Caron Foundation. (See Exhibit "A" at ¶ 77-80). By Purdue Defendants' own admission, the Caron Foundation is located in Wernersville, Pennsylvania, which is within the Eastern District of Pennsylvania. (See Exhibit "C," at p. 2-3). All Plaintiff's medical records and documents relating to his twenty-one day stay at Caron Foundation are located within the Eastern

5

District of Pennsylvania. By the same token the Doctors and medical staff that treated and cared for Plaintiff at the Caron Foundation work in the Eastern District of Pennsylvania. This case is grounded in Plaintiff's addiction to OxyContin and the injuries resulting from such addiction. The most significant contact, operative fact and event in this case is Plaintiff's OxyContin addiction treatment at the Caron Foundation. Although Plaintiff does not reside in the Eastern District of Pennsylvania, Plaintiff has chosen the forum where the most significant contact with the underlying cause of action. Thus, under <u>Shutte</u> and <u>Williams</u>, Plaintiffs' choice of a proper forum should receive substantial deference.

      **B.**    **<u>PURDUE DEFENDANTS' CHOICE OF FORUM SHOULD BE AFFORDED NO WEIGHT</u>**

Defendants Purdue and Abbott's improper Notice of Removal was primarily premised on the erroneous fact that Defendant Doctors, Rubin and Cohen, were fraudulently joined, based on a weak and distorted statute of limitations argument, and as such, Defendants' argument calls for the removal of Defendant Doctors, Rubin and Cohen, as parties to this action. Accordingly, under this argument, the only parties left will be the Plaintiffs and Defendants Purdue and Abbott, both of which have their principle place of business outside of the Commonwealth of Pennsylvania. In <u>Clopay Corp. v. Newell Cos., Inc.</u>, the court stated that in selecting a forum, plaintiffs make a choice that "generally reflect[s] their rational and legitimate concerns, including convenience to themselves and their witness." <u>See</u> <u>Clopay Corp. v. Newell Cos., Inc.</u>, 527 F.Supp. 733, 736 (D.Del. 1981).

Under Defendants Purdue and Abbott's Removal argument, the only Pennsylvania parties left in Federal Court would be the Plaintiffs. Clearly, <u>Clopay</u>, stands for the proposition the Plaintiff knows what is best for himself. In this instance, the Plaintiffs had rational and legitimate reasons for filing their cause of action within the Eastern District of Pennsylvania. Plaintiffs

6

certainly don't need or appreciate Purdue Defendants' unsolicited assistance in choosing the forum for their cause of action.

Further, since the remaining Defendants are located outside of the Commonwealth of Pennsylvania, it would be equally inconvenient, whether the case was in the Eastern District or the Middle District of Pennsylvania. Thus, in order to litigate these matters before the Court, they must travel to Pennsylvania, and Philadelphia is much more accessible than Harrisburg from Connecticut and Illinois. This Jumara factor clearly weighs against transfer.

  C.  **THIS CLAIM AROSE IN THE EASTERN DISTRICT**

Courts in Pennsylvania also apply a discovery rule, a judicially crated device, which "tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Crouse v. Cyclops Industries, 560 Pa. 394, 404, 745 A.2d 606, 611 (2000). **In applying the discovery rule, the determination of the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue is "best determined by the collective judgment, wisdom and experience of jurors."** Id. citing White v. Owens-Corning Fiberglas Corp., 447 Pa.Super. 5, 22, 668 A.2d 136, 144 (1995) *emphasis added*. Thus, according to the Supreme Court of Pennsylvania, "once the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Id.

In the present case, the harm caused to Plaintiff Michael Yurcic resulted from his addiction to OxyContin. (See Exhibit "A" at ¶ 84-90). Despite Defendants Purdue and Abbott's claims, at no time prior to January 17, 2000 has Plaintiff alleged that he was addicted to

7

OxyContin. (See Exhibit "A"). In fact, Plaintiff specifically avers that upon his admission to Caron Foundation, he had no true comprehension of his addiction as a disease. (See Exhibit "A" at ¶ 78).

Without addiction, there is no case. Likewise, without the Plaintiff ascertaining he is addicted to OxyContin, there is no case. Accordingly, this cause of action did not arise until Plaintiff knew or should have known that he was addicted to OxyContin. That knowledge first occurred at the Caron Foundation on or about January 17, 2000. As previously mentioned, the Caron Foundation is located in the Eastern District of Pennsylvania. Thus, a cause of action did not arise until Plaintiff was in the Eastern District of Pennsylvania. Therefore, the third Jumara factor clearly weighs against transfer.

**D.   DEFENDANTS' PURDUE AND ABBOTT ARE PHYSICALLY AND FINANCIALLY CAPABLE OF BEARING THE BURDEN OF THIS CLAIM IN THE EASTERN DISTRICT COMPARED TO THE MIDDLE DISTRICT OF PENNSYLVANIA**

Physically, the Eastern District is equally inconvenient for Defendants Purdue and Abbott. As previously noted, Defendants Purdue and Abbott are located in Connecticut and Illinois, respectively. They are the only parties of concern, as both have argued in the Notice of Removal that Defendant Doctors, Rubin and Cohen, should not be a party to this action.

Financially, Defendants Purdue and Abbott are international pharmaceutical companies. Total sales of OxyContin alone have surpassed one billion dollars. (See Exhibit "A" at ¶ 29). As such, the relative economic burden of litigating in the Commonwealth of Pennsylvania is minimal. See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 202 (D.Del. 1998). It follows that under Jumara, this fourth factor weighs against transfer.

**E.   PURDUE DEFENDANTS HAVE FAILED TO ESTABLISH THAT WITNESSES MAY ACTUALLY BE UNAVAILABLE FOR TRIAL IN THE EASTERN DISTRICT OF PENNSYLVANIA**

8

The location of potential witnesses has traditionally weighed heavily in the "balance of convenience" analysis. Id. at 203. However, there are many different types of witnesses, and each one carries a different weight in the balancing analysis. Id. Party witnesses or witnesses who are employed by a party carry no weight, since each party is compelled to produce the attendance of its own employees for trial. Id. Because expert witnesses or witnesses who are retained by the parties are usually selected on the basis of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, they carry little weight in determining where the balance of convenience lies. See Roller Bearing Co. of America v. Bearings, Inc., 260 F.Supp. 639, 640 (E.D.Pa 1966). Traditionally, fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit weigh heavily in the balance of convenience analysis. Affymetrix, Inc., 28 F.Supp.2d at 203.

The most relevant fact witnesses will be the Doctors and medical staff at the Caron Foundation. These are the witnesses that will be able to testify that Plaintiff did not know he was addicted to OxyContin until after his admittance to Caron Foundation. Further, these witnesses will also be able to testify to the injuries Plaintiff sustained resulting from his OxyContin addiction. Granted, Plaintiff was also treated for his addiction on an out-patient basis in Harrisburg, but Purdue Defendants have failed to claim that this or any other witness in the Middle District would be unavailable for trial in the Eastern District of Pennsylvania.

The testimony of the Defendant Doctors, Rubin and Cohen, will be relegated to establishing the prescription for OxyContin and the risk benefit for same. Under moving defendants' arguments, the claims against the Doctors would necessarily be dismissed, otherwise there would not be complete diversity. Thus, under fraudulent joinder argument the sole

remaining cause of action lies against the pharmaceutical defendants. As such, this case will require extensive expert testimony.

The Purdue Defendants do not suggest that any of its witnesses, or any other witness, might be unavailable for trial in this district but available in the Middle District; therefore, under Jumara, this fifth private factor leans against transfer.

### F.  THE LOCATION THE MOST PERTINENT RECORDS AND DOCUMENTS ARE IN THE EASTERN DISTRICT OF PENNSYLVANIA

The "technological advances of recent years have significantly reduced the weight of this factor in the 'balance of convenience' analysis by 'substantially reduc[ing] the burden of litigat[ing] in a distant forum. Affymetrix, Inc., 28 F.Supp.2d at 205 (citations omitted). Regardless of the venue, the documents will be provided to counsel and presumably presented at trial. Id. Further, in this case the most pertinent records and documents, relating to Plaintiff's twenty-one day stay at the Caron Foundation, are already within the Eastern District of Pennsylvania. Thus, this Jumara factor weighs minimally against transfer.

### G.  THE PUBLIC INTERESTS

The crux of Purdue Defendants' argument that public interest factors also warrant a transfer, is that this case is a "medical malpractice . . .case wherein Middle District residents are suing Middle District physicians." (See Exhibit "C" p. 8). Defendants Purdue and Abbott removed this action primarily based on the theory that Defendant Doctors, Rubin and Cohen, were fraudulently joined to defeat diversity. Yet, Purdue Defendants argue, numerous times throughout this Motion to Transfer Venue, that those very doctors are the basis for transferring. If Plaintiffs' Motion to Remand is successful, this issue is moot. If Plaintiffs' Motion to Remand is unsuccessful, and Defendants' Purdue and Abbott maintain federal jurisdiction based on diversity, the Defendant Doctors must necessarily be dismissed. Herein lies movant's problem, if

this case stays in federal court, the doctors must be dismissed and as such there is now no public interest in transferring the case to the Middle District. Instead of being characterized as "Middle District residents suing Middle District physicians," it is now a Pennsylvania citizen suing international pharmaceutical companies. Thus, the local interest in deciding local controversies at home evaporates and does not become a factor.

The other public factors were not argued by the Purdue Defendants; however, Plaintiff notes that the enforceability of the judicial decision, court congestion, and such practical considerations that could make the trial easy, expeditious, or inexpensive do not weigh in either parties favor in the balancing analysis. Finally, addiction to OxyContin is not a local issue, it is a state wide albeit national crisis; therefore, each juror has a relation to this addiction case.

## V.     CONCLUSION

Based on the foregoing, Defendants Purdue and Abbott's fraudulent joinder argument, removing this case to federal court, would result in the removal of Defendant Doctors, Rubin and Cohen, as party defendants. Without the Defendant Doctors Rubin and Cohen as party defendants, Purdue Defendants are not able to establish that the balancing test favors their requested transfer. Conversely, Purdue Defendants arguments in its Motion to Transfer Venue, should help persuade this court that Plaintiffs' Motion to Remand must granted.

It is clear that if this case remains in federal court based on diversity, that movant has failed to show that the balance of convenience analysis is weighed in its favor. To the contrary, Plaintiff has clearly indicated that such balance is against transferring this case to the Middle District.

Therefore, Plaintiffs respectfully request that this Motion to Transfer Venue be denied and Plaintiffs further request an award of attorneys' fees and costs associated with filing this

response.

  **WHEREFORE,** Plaintiffs respectfully request that this Honorable Court deny Purdue Defendants' Motion to Transfer Venue Pursuant to Title 28 U.S.C. § 1404(a).

                Respectfully submitted,

              **ANAPOL, SCHWARTZ, WEISS,**
               **COHAN, FELDMAN & SMALLEY, P.C.**


           **BY:** _____
             SOL H. WEISS, ESQUIRE
             TRACY A. FINKEN, ESQUIRE
             MARC S. STOLEE, ESQUIRE
             Attorneys for Plaintiffs
             I.D. Nos. 15925/82258/87983
             1900 Delancey Place
             Philadelphia, PA 19103
             (215) 735-2098

**DATED:** _____