UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL and KELLY YURCIC, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> PURDUE PHARMA, L.P., PURDUE : <br> PHARMA, INC., PURDUE FREDERICK : <br> COMPANY, ABBOTT LABORATORIES, : <br> ABBOTT LABORATORIES, INC., : <br> MORTON RUBIN, M.D., and HOWARD : <br> R. CORBIN, M.D., : <br> : <br> Defendants. : <br> : | Case No. 02-CV-3737 |

**PURDUE DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO TRANSFER VENUE
PURSUANT TO TITLE 28 U.S.C. § 1404(a)**

**INTRODUCTION**

The Purdue defendants submit this memorandum in reply and in further support of their Motion to Transfer this case to the Middle District of Pennsylvania (the "Middle District"). <u>Every</u> critical alleged fact relating to plaintiffs' alleged injuries occurred in the Middle District and it is undisputed that <u>every</u> critical witness, record and document is located either in the Middle District or closer to the Middle District courthouse than to the Eastern District courthouse. Accordingly, defendants' transfer motion must be granted.

Plaintiffs do not dispute the following:

• Both plaintiffs live in the Middle District;

• All three physicians referenced in the complaint work and treated Mr. Yurcic in the Middle District;

1

- Mr. Yurcic was treated at the Holy Spirit Hospital, and Healthsouth Rehabilitation of Mechanicsburg, both located in the Middle District;

- Mr. Yurcic was treated in the Middle District by Dr. Albert Zanetti who purportedly administered a "narcotic withdrawal plan" with which Mr. Yurcic alleges he was unable to comply;

- The only connection to the Eastern District is plaintiff's treatment at the Caron Foundation which, although located in the Eastern District, is significantly closer to the Middle District courthouse in Harrisburg than the Eastern District Courthouse in Philadelphia.

Plaintiffs themselves characterize this case as "a claim for medical malpractice and negligence relating to the sale and prescription of OxyContin to plaintiff Michael Yurcic." See Plaintiffs' Memorandum, p. 3. Yet, plaintiffs concede that *none* of the relevant facts relating to the purported sale *nor* any facts underlying Mr. Yurcic's being prescribed OxyContin took place anywhere outside the Middle District of Pennsylvania. Rather, plaintiffs claim that the case should remain in the Eastern District solely because this is where Mr. Yurcic was partially *treated* for his alleged injuries, rather than in the District where those alleged injuries actually occurred.

Although conceding that the Middle District is an alternative venue, plaintiffs shamelessly ignore the overwhelming number of connections this case has to the Middle District. Plaintiffs offer a series of irrational arguments which necessarily fail for three principal reasons. First, plaintiffs completely ignore all of the connections this case has to the Middle District. Second, the Middle District would be more convenient for every critical witness in this case. Third, plaintiffs incorrectly argue that where an injured plaintiff is allegedly treated is more important than how or where he was injured. For each of these reasons, this case should be transferred to the Middle District.

2

I.  **PLAINTIFFS FAIL TO ACKNOWLEDGE THE OVERWHELMING NUMBER OF CONNECTIONS THIS CASE HAS TO PLAINTIFFS' HOME FORUM IN THE MIDDLE DISTRICT**

Plaintiffs fail to address the undeniable connections this case has to the Middle District. For example, plaintiffs do not acknowledge that defendants have requested that the Court transfer the case to plaintiffs' own home District. Significantly, plaintiffs concede that when, as here, a plaintiff chooses a forum that has no significant contact with the underlying cause of action and is not the plaintiff's home forum, it is entitled to less weight. See Plaintiffs' Memorandum, p. 5 (citing Williams v. Monroe Emergency Physicians, P.C., 1999 WL 124398, at *2 (E.D. Pa. 1999) (Kauffman, J.); Schmidt v. Leader Dogs for the Blind, Inc., 544 F. Supp. 42, 47 (E.D. Pa. 1982)).

The only connection to the Eastern District is the alleged fact that some of Mr. Yurcic's treatment was provided at the Caron Foundation. Conspicuously absent from Plaintiffs' Memorandum is any reference to the prior treatment Mr. Yurcic received at the Holy Spirit Hospital and Healthsouth Rehabilitation of Mechanicsburg as well as his participation in a "narcotic withdrawal plan," all of which took place entirely in the Middle District and before his admission to the Caron Foundation. See Complaint, ¶¶ 61-65, 75-76. Moreover, plaintiffs do not attempt to, and indeed cannot, rebut the fact that the Caron Foundation is located on the western tip of Berks County, significantly closer to the Middle District courthouse in Harrisburg than to the Eastern District courthouse in Philadelphia. Thus, to the extent that the location of Mr. Yurcic's treatment is relevant at all, even this factor militates in favor of a transfer to the Middle District.

Plaintiffs' Memorandum reads as if Purdue were attempting to transfer this case to some far-away venue. Completely ignoring the fact that plaintiffs themselves actually live in the

3

Middle District, plaintiffs argue in conclusory fashion that the Eastern District is both "physically" and "financially" the more sensible District in which to litigate this case. See Plaintiffs' Memorandum, p. 8. Furthermore, plaintiffs claim that "Philadelphia is much more accessible than Harrisburg" for the out-of-state defendants. Id. at 7. Aside from being wholly unsupported, both arguments completely ignore the fact that the defendants have requested that the case be moved into the plaintiffs' own home forum, which would unquestionably be more convenient and accessible for the plaintiffs, all three of the treating physicians referenced in the Complaint, and any employee from Holy Spirit Hospital, Healthsouth Rehabilitation of Mechanicsburg or the Caron Foundation who may be required to testify. Plaintiffs also completely ignore the affidavit attached to Purdue's original Memorandum explaining that the contacts the Purdue defendants had with Mr. Yurcic's physicians took place in the Middle District.[1]

In their Opposition, plaintiffs tacitly acknowledge that the physician defendants were in fact fraudulently joined, suggesting that their dismissal from the case militates against a transfer. Plaintiffs state that "removal of the Defendant doctors, Rubin and Cohen, as party defendants will defeat Purdue's Motion to Transfer" because "the only Pennsylvania parties left in Federal Court would be the Plaintiffs." Id. at 1, 6. This argument completely ignores the fact that whether or not Drs. Rubin and Cohen are dismissed from the case, they will undoubtedly remain important fact-witnesses whose testimony and records will be required as this case proceeds.

In a last ditch effort to try to distance this case from its inextricable links to the Middle District, plaintiffs argue that jurors in the Middle District do not have a local interest in this case

---

[1] In fact, after conducting further review subsequent to the filing of its original Memorandum of Law in this matter, Purdue has verified that every sales call made upon Drs. Cohen and Rubin from any Purdue sales representative took place in the Middle District. See the Supplemental Affidavit submitted by Darren Coleman and attached hereto as Exhibit "A".

because addiction is a "national crisis" and therefore "not a local issue." Id. at 11. To suggest that a juror outside the Middle District has as much of an interest in this case as one within the Middle District defies common sense. This case involves Middle District plaintiffs who have sued Middle District physicians and out-of-state manufacturers for alleged injuries, all of which occurred in the Middle District. No jurors anywhere would have more of a local connection to this case than those in the Middle District, a fact which this Court has often considered when deciding whether to transfer a case. See Tyler v. Rental Service Corp., 2002 U.S. Dist. LEXIS 1828, at *8 (E.D. Pa. 2002); O'Laughlin v. Consolidated Rail Corp., 1999 U.S. Dist. LEXIS 1782, at *6 (E.D. Pa. 1999); American Littoral Society v. United States Environmental Protection Agency, 943 F. Supp. 548, 550 (E.D. Pa. 1996).

## II. PLAINTIFFS OFFER NO SUPPORT FOR THEIR ARGUMENT THAT THE LOCATION OF TREATMENT IS MORE IMPORTANT THAN WHERE THE INJURY OCCURRED

The sole argument offered by plaintiffs to keep this case in the Eastern District is that one of Mr. Yurcic's three treatment facilities is located here. Plaintiffs brazenly state that "[t]he most significant contact, operative fact and event in this case is Plaintiff's OxyContin *addiction treatment* at the Caron Foundation." See Plaintiffs' Memorandum, p. 6 (emphasis added). However, plaintiffs fail to cite any legal authority for the proposition that where a plaintiff is *treated* for an injury is more important than where the injury actually occurred. As a result, plaintiffs have concocted a new theory, completely inconsistent with the allegations in the Complaint, that seems to contend that Mr. Yurcic did not suffer his alleged injury until *after* he was admitted to the Caron Foundation in the Eastern District.

Logic dictates that Mr. Yurcic would only seek treatment after allegedly becoming addicted to OxyContin. Therefore, his alleged injury must necessarily have occurred in the

5

Middle District.  Incomprehensibly, plaintiffs now seem to suggest that Mr. Yurcic did not suffer his addiction injury until *the date of his discharge* from the Caron Foundation on January 17, 2000 stating that "at no time prior to January 17, 2000 has Plaintiff alleged that he was addicted to OxyContin."  Id. at 8.  Plaintiffs make this claim despite allegations in the Complaint that in 1999, Mrs. Yurcic noticed that her husband's OxyContin pills were missing and his doctors had him immediately check into Holy Spirit Hospital for "suspected overdosing of OxyContin."  See Complaint ¶¶ 59-61.  Also in 1999, Mr. Yurcic was admitted to Healthsouth Rehabilitation of Mechanicsburg, an "acute rehab hospital" and underwent a "narcotic withdrawal plan" with which he was allegedly unable to comply because of his inability to limit his OxyContin use.  Id. at ¶¶ 75-77.  Plaintiffs' claim that Mr. Yurcic did not actually suffer his injury until after his discharge from the Caron Foundation is totally inconsistent with the allegations in the Complaint and devoid of any logic or credibility.

Moreover, when balancing the relevant considerations regarding transfer, the fact that Mr. Yurcic was eventually *treated* at the Caron Foundation is of little significance considering that this case involves allegations of injuries suffered by Middle District residents as a result of acts or omissions of Middle District physicians, acting in the Middle District.

## **CONCLUSION**

For each of the foregoing reasons, the Purdue defendants respectfully request that this case be transferred immediately to the Middle District of Pennsylvania.

                        AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.


                        By _____
                            Edward F. Mannino (Atty. I.D. #04504)
                            David L. Comerford (Atty. I.D. #65969)
                            Katherine Menapace (Atty. I.D. #80395)
                            Jason A. Snyderman (Atty. I.D. #80239)
                            One Commerce Square
                            2005 Market Street, Suite 2200
                            Philadelphia, Pennsylvania 19103
                            (215) 965-1200

                            Attorneys for Defendants
                            Purdue Pharma, L.P.
                            Purdue Pharma Inc.
                            The Purdue Frederick Company

Dated: July ___, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL and KELLY YURCIC, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> PURDUE PHARMA, L.P., PURDUE : <br> PHARMA, INC., PURDUE FREDERICK : <br> COMPANY, ABBOTT LABORATORIES, : <br> ABBOTT LABORATORIES, INC., : <br> MORTON RUBIN, M.D., and HOWARD : <br> R. CORBIN, M.D., : <br> : <br> Defendants. : <br> : | Case No. 02-CV-3737 |

## **SUPPLEMENTAL AFFIDAVIT OF DARREN COLEMAN**

Darren Coleman, being duly sworn according to law, avers as follows:

1.      I am currently an Associate Director, Sales Support, for Purdue Pharma L.P.  I make this affidavit on my own personal knowledge in support of the Purdue defendants' Motion to Transfer Venue Pursuant to Title 28 U.S.C. § 1404(a).

2.      In connection with this litigation, I have reviewed records relating to all sales calls made to Drs. Rubin and Cohen from any Purdue representative from 1997 through 2001.

3.      As a result of this review, I have learned that there have only been two sales representatives who have made sales calls to the two doctors involved in this case (Rubin and Cohen) between 1997-2001.  My previous affidavit included an error due to the fact that there is more than one physician named Howard Cohen in Pennsylvania.

4.      All of the sales calls to the Dr. Cohen involved in this case took place in Dr. Cohen's office in Mechanicsburg, Pennsylvania.

8

     5.     All of the sales calls to the Dr. Rubin involved in this case took place in Dr. Rubin's office in Mechanicsburg, Pennsylvania.

     6.     Every sales call made to these two doctors was made by Purdue sales representatives whose territory included Harrisburg, Mechanicsburg, Carlisle and Camp Hill, Pennsylvania at the time of those calls.

_____
DARREN COLEMAN

Sworn to and subscribed
Before me this      day
of                  , 2002

_____
Notary Public
My commission expires: