IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL and KELLY YURCIC,

                Plaintiffs,

v.

PURDUE PHARMA, L.P.,
PURDUE PHARMA, INC.,
PURDUE FREDERICK COMPANY,
ABBOTT LABORATORIES,
ABBOTT LABORATORIES, INC.,
MORTON RUBIN, M.D., and
HOWARD R. CORBIN, M.D.,

                Defendants.

Case No. 02-3737

**PURDUE AND ABBOTT'S JOINT MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION
OF THE COURT'S NOVEMBER 8, 2002 ORDER**

    Defendants, Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company (collectively, "Purdue"), and Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott"), respectfully submit this Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration of the Court's November 8, 2002 order ("Order").

**INTRODUCTION**

    In the Order, the Court determined that the allegations in Plaintiffs' Complaint made it "clear that Drs. Rubin and Cohen have been fraudulently joined." The Court accordingly denied Plaintiffs' Motion to Remand, granted defendant Howard R. Cohen, M.D.'s motion to dismiss, and dismissed the claims against defendant Morton Rubin, M.D. See Order at 3-4. The Court

also granted Purdue's Motion to Transfer Venue after finding that, on balance, a transfer to the Middle District of Pennsylvania was appropriate, in part because that is where both Plaintiffs reside and where a number of material witnesses are located.  See Order at 4-5.

Plaintiffs' Motion for Reconsideration should be denied because it fails to meet the strict standards for reconsideration established by this Court.  There is no justification for disturbing any provision of the Order because the Court has already rejected the arguments Plaintiffs raise in support of the instant motion.  See Haymond v. Lundy, 205 F. Supp. 2d 390, 395 (E.D. Pa. 2002) (Shapiro, J.) (denying motion for reconsideration; "Motions for reconsideration are not to be used to reargue or relitigate matters already decided."); Dintino v. Doubletree Hotels Corp., No. 96-7772, 1998 U.S. Dist. LEXIS 10093 (E.D. Pa. June 30, 1998) (Fullam, J.) (denying motion for reconsideration which did not raise any issues not considered at the time the order granting summary judgment was entered).

There is no merit to Plaintiffs' assertion that the Court committed an error of law in concluding that Drs. Cohen and Rubin were fraudulently joined.  As the Court properly determined, *Plaintiffs' own allegations* conclusively establish that their medical malpractice claims are time-barred.  With regard to the decision to transfer venue, Plaintiffs fail to establish how the Court's consideration of the factors set forth in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir. 1995), constituted a clear error of law.  Plaintiffs mistakenly contend that Jumara prohibits the Court's consideration of the convenience of witnesses absent Defendants' showing that those witnesses would be unavailable for trial in the Eastern District.  This misconstruction of the law is as unavailing as Plaintiffs' other arguments in support of the instant motion.  The Order is entirely proper as it stands.

**ARGUMENT**

**I.    PLAINTIFFS HAVE NOT MET THE STRICT STANDARDS FOR RECONSIDERATION**

As Plaintiffs themselves acknowledge, reconsideration is "an extraordinary remedy" that is only "to be granted sparingly." Pl. Recons. Mem. at 4. The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Mintz v. State, No. 99-1823, 1999 U.S. Dist. LEXIS 8873, at * 3-4 (E.D. Pa. June 4, 1999) (denying motion for reconsideration; citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). Federal district courts should grant such motions infrequently because of their strong interest in finality of judgment. Id. at *4 (citing Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)). In this district, a court will grant a party's motion for reconsideration only if there is shown to be: (1) the development of an intervening change in the law; (2) the emergence of new evidence not previously available; or (3) a clear error of law or manifest injustice. Rivera v. Delta Air Lines, Inc., No. 97-1130, 1997 U.S. Dist. LEXIS 17936 (E.D. Pa. Nov. 6, 1997) (denying motion for reconsideration). Plaintiffs meet none of these requirements.

Plaintiffs' Motion for Reconsideration does not establish a single legal development, factual development, or argument as to manifest injustice that would dictate reversal of the Order. The grounds Plaintiffs assert as clear errors of law are nothing more than rehashed versions of arguments already rejected by this Court. As such, the Motion for Reconsideration must be denied.

### A. The Court Did Not Commit Clear Error in Finding That the Claims Against the Doctor Defendants Are Time-Barred

In the Order, the Court concluded that Plaintiffs' medical malpractice claims could not survive because the alleged acts of malpractice took place from October 1996 to February 1999 and from March through August 1999, well over two years before the suit was filed. See Order at 3 & n.3. The Court rejected Plaintiffs' attempt to rely on the discovery rule, finding that Plaintiffs' own allegations showed that Mr. Yurcic knew of his alleged addiction when he agreed to enroll in a detoxification program and was admitted to the Caron Foundation "*for treatment of his addiction to OxyContin*" in December 1999. See Order at 4 (quoting Compl. ¶ 77) (emphasis added). As the Court recognized, even if the discovery rule applied, Plaintiffs' claims would still be time-barred because Mr. Yurcic knew of his alleged injury more than two years before this suit was filed.

Given these findings, Plaintiffs' three arguments for overturning the Court's denial of remand and dismissal of Drs. Cohen and Rubin must fail. See Pl. Recons. Mem. at 4-6. Plaintiffs' first contention, that "when Plaintiff Michael Yurcic knew or should have known that he had an addiction disease is a question for the finders of fact," merely reasserts a position Plaintiffs took in their Motion to Remand. Compare Pl. Recons. Mem. at 4-5 with Pl. Mem. at 8 (each citing White v. Owens-Corning Fiberglas Corp., 668 A.2d 136, 144 (Pa. Super. Ct. 1995)). Plaintiffs' own authorities recognize that courts may determine that a claim is barred by the statute of limitations as a matter of law. See Dreischalick v. Dalkon Shield Claimants Trust, 845 F. Supp. 310, 315 (W.D. Pa. 1994) (statute of limitations issue may be decided as a matter of law "where the facts are undisputed and lead unerringly to the conclusion that the length of time it took the plaintiff to discover the injury or its cause was unreasonable"); White, 668 A.2d at 144-

4

45; <u>Crouse v. Cyclops Indus.</u>, 745 A.2d 606, 611 (Pa. 2000) ("Whether a complaint is timely filed within the limitations period is a matter of law for the court to determine. . . . [W]here the facts are so clear that reasonable minds cannot differ . . . the commencement of the limitations period [may] be determined as a matter of law.") (emphasis omitted).[1]

       Plaintiffs' second argument, that the Court "erroneously overlook[ed] the fact that Plaintiff's addiction was a disease, and that Plaintiff had no way of knowing that he had such a disease until it was diagnosed . . . at the Caron Foundation," also echoes a theory unsuccessfully urged in support of remand. <u>Compare</u> Pl. Recons. Mem. at 5 <u>with</u> Pl. Mem. at 8 (each contending that upon Plaintiff's admission to the Caron Foundation, he "had no true comprehension of his addiction as a disease"). Contrary to Plaintiffs' assertion, the question here is not when Mr. Yurcic's alleged injury was diagnosed by a third party (Pl. Recons. Mem. at 5), but when Mr. Yurcic knew or should have known that he had been injured by another party's conduct. <u>See</u> Order at 4 (citing <u>Dreischalick</u>, 845 F. Supp. at 314). The Court properly determined that this occurred more than two years before Plaintiffs filed suit. As the Court found, Plaintiffs' own allegations establish that Mr. Yurcic knew of his claimed injury and its alleged cause by December 1999 at the latest because that was when he agreed to enroll in a detoxification program and "was admitted to the Caron Foundation *for treatment of his addiction to OxyContin*." <u>See id.</u> (quoting Compl. ¶ 77) (emphasis added).

---

[1]   <u>See also</u> <u>Floyd v. Brown & Williamson Tobacco Corp.</u>, 159 F. Supp. 2d 823, 829 (E.D. Pa. 2001) (DuBois, J.) (granting motion to dismiss personal injury claims where complaint established plaintiff knew or should have known cigarettes were a potential cause of his health problems more than two years before filing suit); <u>In re Diet Drugs Prods. Liab. Litig.</u>, No. 1203, CIV. 99-20078, 1999 WL 554608 (E.D. Pa. June 29, 1999) (Bechtle, J.) (denying remand after concluding claims against local defendant were time-barred); <u>Miller v. Firestone Tire & Rubber Co.</u>, 581 F. Supp. 36, 37 (W.D. Pa. 1984) (same).

Plaintiffs' claim that Mr. Yurcic "had no way of knowing" he had an "addiction disease" until sometime between December 27, 1999, and January 17, 2000 (see Pl. Recons. Mem. at 4-5) is disingenuous and belied by their own pleadings.  Plaintiffs specifically alleged that on or about December 17, 1999, after a lengthy discussion with Dr. Zanetti and others, Mr. Yurcic "agreed to enroll in an in-patient detox program" (Compl. ¶ 76) and that on or about December 27, 1999, Mr. Yurcic "was admitted to the Caron Foundation *for treatment of his addiction to OxyContin*" (Compl. ¶ 77) (emphasis added).[2]

Plaintiffs' third argument, that Mr. Yurcic "used reasonable diligence to ascertain that there was an injury," also fails to expose a clear error of law.  Pl. Recons. Mem. at 5-6.  Whether or not Mr. Yurcic was diligent is irrelevant.  As the Court already determined, the discovery rule "is of no consequence in this case" because Mr. Yurcic knew of his alleged injury by December 1999 at the latest.  See Order at 4 (citing Dreischalick, 845 F. Supp. at 314 (discovery rule "arises from the inability of an injured person, despite the exercise of due diligence, to know of an injury or its cause")); Compl. ¶ 75 (alleging that on or about November 19, 1999, Dr. Zanetti established a "six month narcotic withdrawal plan"); Compl. ¶ 76 (alleging that on or about December 17, 1999, (1) Mr. Yurcic informed Dr. Zanetti that he had used a two-week supply of OxyContin in one week and that he "was presently suffering from withdrawals" and (2) Plaintiffs had a "length[y] discussion" with Dr. Zanetti, his wife, and his office manager, after which Mr. Yurcic "agreed to enroll in an in-patient detox program"); Compl. ¶ 77 (alleging that on or about

---

[2]  The arguments that addiction is a disease and "apparently an illness which may be contracted innocently or involuntarily" do not change the fact that Mr. Yurcic knew he was commencing treatment for his alleged addiction to OxyContin in December 1999.  See Compl. ¶¶ 76, 77; cf. Pl. Recons. Mot. ¶ 4 (citing Robertson v. California, 370 U.S. 660, 667 (1962) (holding state court's construction of statute making it a criminal offense to "be addicted to the use of narcotics" violated the Fourteenth Amendment)).

December 27, 1999, Mr. Yurcic "was admitted to the Caron Foundation for treatment of his addiction to OxyContin").

In short, the Court properly rejected Plaintiffs' theory that Mr. Yurcic did not or could not know of his injuries until he was discharged from the Caron Foundation on January 17, 2000. Plaintiffs' own allegations establish that the claims against Drs. Cohen and Rubin are time-barred because Mr. Yurcic knew (or should have known) of his claimed injuries no later than December 1999.

### B. The Court Did Not Commit Clear Error in Finding That Venue Should Be Transferred to the Middle District

Before granting Purdue's Motion to Transfer Venue, the Court weighed numerous factors, as instructed by the Third Circuit in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir. 1995). The Court concluded that this matter should be transferred to the Middle District because, inter alia, that is where both Plaintiffs reside and where Drs. Cohen and Rubin's practices, Holy Spirit Hospital (where Mr. Yurcic was treated), Dr. Zanetti, and Mazzitti and Sullivan (a treatment center Mr. Yurcic attended) are located. See Order at 5.

Plaintiffs assail the Court's decision to transfer venue on two asserted grounds. First, Plaintiffs contend "this Court overlooked the holding in Jumara, which provides that the convenience of the witnesses is only considered when these witness[es] may be unavailable for trial. This was an error of law." Pl. Recons. Mem. at 8. Second, Plaintiffs contend that "when considering the Jumara factors, the Court failed to give weight to the fact that the Caron Foundation is located in the Eastern District of Pennsylvania." Id. Neither of these arguments mandates reconsideration of the Order because both were previously raised, unsuccessfully, in Plaintiffs' opposition to the Motion to Transfer Venue. See Pl. Mem. in Opp. to Purdue's Mot.

7

to Transfer Venue ("Pl. Venue Mem.") at 5-6, 9-10; <u>Haymond</u>, 205 F. Supp. 2d at 395; <u>Dintino</u>, 1998 U.S. Dist. LEXIS 10093.  Moreover, neither of these arguments reveals a clear error of law because both misconstrue the Third Circuit's opinion in <u>Jumara</u>.

In <u>Jumara</u>, the Third Circuit outlined a number of factors that courts have considered in determining motions to transfer venue pursuant to 28 U.S.C. § 1404(a).  <u>See</u> 55 F.3d at 879-80. The Court of Appeals emphasized, however, that "there is no definitive formula or list of the factors to consider."  <u>See</u> <u>id.</u> at 879.  Thus, even if the Court did fail to consider the location of the Caron Foundation, as Plaintiffs presume, this failure would not constitute a clear error of law. The location of the Caron Foundation would not mandate denial of Purdue's motion to transfer venue in any event.  Plaintiffs do not dispute that the Caron Foundation is closer to the Middle District's courthouse in Harrisburg than it is to the Eastern District's courthouse in Philadelphia. <u>See</u> Def. Br. in Supp. of Mot. to Transfer Venue at 2-3.

The factors set forth by the <u>Jumara</u> court include "the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  <u>Id.</u> (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3851, at 420-22 (2d ed. 1986)).  The referenced pages of this treatise confirm that in considering the convenience of witnesses, courts *may* take into account the actual availability of such witnesses:

> "There are frequent indications in the cases that what the courts actually are considering is not so much the convenience of the witnesses but the possibility of having their live testimony at the trial.  Thus, transfer *may* be denied when the witnesses, although in another district, are within the 100-mile reach of the subpoena power or when they are employees of a party and their presence can be obtained by that party."

8

15 Wright, Miller & Cooper, supra, § 3851 at 420-22 (emphasis added, footnotes omitted). Thus, there is no basis for contending that "this Court *erred* in taking into account the convenience of the witnesses located in the Middle District, when Purdue . . . was unable to show that these witnesses would actually be unavailable for trial in the Eastern District." Pl. Recons. Mem. at 8-9 (emphasis added). As noted above, Jumara does not require the Court to apply any "definitive formula" in determining "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 55 F.3d at 879. As Plaintiffs themselves agree, "[t]he decision whether to transfer is left to the sound discretion of the district court." Pl. Venue Mem. at 4. Plaintiffs have failed to show that the Court's application of a "multi-factor balancing test" gave rise to a clear error of law. See Order at 4-5 (quoting Jumara, 55 F.3d at 875).

## CONCLUSION

Plaintiffs' challenge of the Order merely recycles arguments previously raised in support of remand and in opposition to Purdue's Motion to Transfer Venue. Plaintiffs' own allegations belie the notion that the Court committed a clear error of law in determining that the medical malpractice claims are time-barred. Plaintiffs' venue arguments are equally unavailing given the Court's proper determination that the Middle District is a preferable forum because it is where Plaintiffs reside and where numerous material witnesses are located. As Plaintiffs acknowledge, venue determinations are "left to the sound discretion of the district court." Plaintiffs have failed to show that the Order merits reconsideration under the strict standards established by this Court. The Motion for Reconsideration should be denied.

Respectfully Submitted,

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.

_____
Edward F. Mannino (Atty. I.D. #04504)
David L. Comerford (Atty. I.D. #65969)
Katherine Menapace (Atty. I.D. #80395)
Jason A. Snyderman (Atty. I.D. #80239)
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, Pennsylvania 19103
(215) 965-1200

Attorneys for Defendants Purdue Pharma LP, Purdue Pharma Inc. and The Purdue Frederick Company

LAVIN, COLEMAN, O'NEIL, RICCI FINARELLI & GRAY

_____
Joseph E. O'Neil, Esquire
510 Walnut Street, Suite 1000
Philadelphia, PA 19106
(215) 627-0303

Attorney for Defendants Abbott Laboratories and Abbott Laboratories, Inc.

# CERTIFICATE OF SERVICE

I, Jason A. Snyderman, Esquire, hereby certify that a true and correct copy of the foregoing Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration was served this 6th day of December, 2002, upon the following, via United States first class mail:

SOL H. WEISS, ESQUIRE
MARC STOLEE, ESQUIRE
Anapol, Schwartz, Weiss, Cohan,
Feldman & Smalley, P.C.
1900 Delancey Place
Philadelphia, PA  19103

Joseph E. O'Neil, Esquire
Lavin, Coleman, O'Neil, Ricci
Finarelli & Gray
510 Walnut Street, Suite 1000
Philadelphia, PA 19106

Allan H. Starr, Esquire
Stephan R. Paul, Esquire
White & Williams, LLP
1800 One Liberty Place
Philadelphia, PA 19103

Kenneth Fair, Esquire
Naulty, Scaricamazza & McDevitt
Suite 1617 John F. Kennedy Blvd.
Philadelphia, PA  19103

_____
Jason A. Snyderman